Slip Op. 14-163

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **STANDARD FURNITURE MANUFACTURING CO., INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION**, <br><br> Defendants. | **Before: Timothy C. Stanceu, Chief Judge** <br><br> **Court No. 13-00202** |

**OPINION**

[Dismissing an action for failure to state a claim upon which relief can be granted in an action seeking distributions under the Continued Dumping and Subsidy Offset Act of 2000]

Dated: December 31, 2014

*Jill A. Cramer*, *Kristin H. Mowry*, *Jeffrey S. Grimson*, *Sarah Wyss*, and *Daniel R. Wilson*, Mowry & Grimson, PLLC, of Washington, DC, for plaintiff Standard Furniture Manufacturing Co., Inc.

*Martin M. Tomlinson*, Trial Attorney, *Franklin E. White, Jr*., Assistant Director, *Joyce R. Branda*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States.

*Patrick V. Gallagher, Jr.*, Attorney-Advisor, *Robin L. Turner*, Acting Assistant General Counsel for Litigation, and *Dominic L. Bianchi*, General Counsel, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission.

Stanceu, Chief Judge: This case arose from the actions of two agencies, the U.S. International Trade Commission (the "Commission" or "ITC") and U.S. Customs and Border Protection ("Customs" or "CBP"), that denied plaintiff Standard Furniture Manufacturing Co., Inc. ("Standard"), a domestic producer of wooden bedroom furniture, certain monetary benefits

under the now-repealed Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or "Byrd Amendment"), §§ 1001-03, 114 Stat. 1549, 19 U.S.C. § 1675c (2000) (repealed 2006, effective 2007).  Compl. ¶¶ 5, 14 (May 14, 2013), ECF No. 4 ("Compl.").  The ITC determined that Standard did not qualify for "affected domestic producer" ("ADP") status, which would have made Standard eligible for distributions of duties collected under an antidumping duty order on wooden bedroom furniture from the People's Republic of China ("PRC" or "China"), because Standard, in responding to an ITC questionnaire, had opposed the petition that resulted in the order.  Compl. ¶¶ 24, 35-40.  Customs denied Standard's requests for CDSOA distributions for Fiscal Years 2011 and 2012.  Compl. ¶¶ 37, 40.

Plaintiff brought this case claiming that the actions by the ITC and Customs violated the CDSOA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006), and alleging various facial and as-applied constitutional challenges to the CDSOA.  Compl. ¶¶ 47-59. Plaintiff asks that this court order the ITC to add Standard to the list of ADPs for Fiscal Years 2011 and 2012 and require Customs to disburse to Standard a pro rata portion of CDSOA distributions for Fiscal Years 2011 and 2012.  Compl.¶ 60.

Before the court is defendants' motion to dismiss under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted.  Defs.' Mot. to Dismiss (Apr. 24, 2014), ECF No. 28 ("Defs.' Mot.").  The court determines that relief is not available on any of plaintiff's claims and will enter judgment dismissing this action.

## I. BACKGROUND

Background on this action is provided in the court's prior opinion and order, *Standard Furniture Mfg. Co., Inc. v. United States*, 38 CIT __, Slip Op. 14-77 (June 27, 2014) ("*Standard Furniture I*") (denying motion to stay), and is supplemented herein.

A.  The CDSOA

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") by establishing an annual distribution of assessed antidumping and countervailing duties to eligible ADPs as reimbursement for qualifying expenses.  19 U.S.C. § 1675c(a)-(d) (2000).  ADP status is limited to petitioners and interested parties, *id.* § 1675c(b)(1), that indicated support for the petition that gave rise to the pertinent antidumping or countervailing duty order "by letter or through questionnaire response," *id.* § 1675c(d)(1).  Under the CDSOA, within sixty days after the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued an antidumping order, the ITC would forward to Customs a list of ADPs potentially eligible for CDSOA distributions of duties collected under that order and Customs would publish that list in the Federal Register.  *Id.* § 1675c(d)(1).  Customs was then responsible for making the annual distributions to qualifying ADPs that file certifications with Customs.  *Id.* § 1675c(d)(3), (e).

B.  Administrative Actions at Issue

In 2003, the ITC commenced an investigation to determine whether imports of wooden bedroom furniture from the People's Republic of China ("China") were causing or threatening to cause material injury to the domestic industry.  *Initiation of Antidumping Duty Investigation: Wooden Bedroom Furniture from the People's Republic of China*, 68 Fed. Reg. 70,228 (Int'l Trade Comm'n Dec. 17, 2003).  In response to an ITC questionnaire issued during this investigation, Standard stated that it opposed the petition that triggered the investigation.  Compl. ¶ 24.  In 2005, Commerce issued an antidumping duty order on imports of wooden bedroom furniture from China.  *Notice of Amended Final Determination of Sales at Less Than Fair Value*

*and Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Int'l Trade Admin. Jan. 4, 2005).

For Fiscal Years 2011 and 2012, Customs published individual lists of ADPs that the ITC determined were potentially eligible for CDSOA distributions and did not include Standard on either list. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 76 Fed. Reg. 31,020 (Dep't of Homeland Sec. May 27, 2011) (concerning Fiscal Year 2011); *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 77 Fed. Reg. 32,718 (Dep't of Homeland Sec. June 1, 2012) (concerning Fiscal Year 2012). On June 18, 2011, Standard filed a certification with Customs requesting CDSOA distributions for Fiscal Year 2011, which Customs subsequently denied. Compl. ¶ 36-37. On July 19, 2012, Standard filed another certification with Customs, this time requesting CDSOA distributions for Fiscal Year 2012, which Customs also denied. Compl. ¶¶ 39-40.

C.  Procedural History

Plaintiff commenced this action on May 14, 2013. Summons, ECF No. 1; Compl. Defendants filed a motion to dismiss the action on April 24, 2014. Defs.' Mot. 1. Plaintiff filed a response to defendants' motion to dismiss on June 2, 2014,[1] Pl. Standard Furniture Mfg., Co., Inc.'s Resp. to Defs.' Mot. to Dismiss, ECF No. 29, and defendants filed a reply in support of the motion on August 22, 2014, Defs.' Reply in Supp. of Mot. to Dismiss, ECF No. 42. On June 27, 2014, the court denied a motion by plaintiff to stay this action pending final resolution of a petition for a writ of certiorari to the U.S. Supreme Court in a case in which two other

---

[1] Plaintiff's response to defendants' motion to dismiss asserts only that the court should deny defendants' motion and reiterates its position that the court should stay this case pending the U.S. Supreme Court's consideration of a writ of certiorari, a request the court denied. Pl. Standard Furniture Mfg., Co., Inc.'s Resp. to Defs.' Mot. to Dismiss (June 2, 2014), ECF No. 29.

domestic furniture manufacturers challenged the denial of CDSOA distributions. *Standard Furniture I*, 38 CIT at __, Slip Op. 14-77 at 5.  Defendants filed a status report on October 20, 2014, following the U.S. Supreme Court's denial of the petition for a writ of certiorari that was the subject of plaintiff's motion to stay.  Defs. United States & U.S. Customs & Border Prot.'s Status Report, ECF No. 44, *see Ashley Furniture Indus., Inc., et al. v. United States*, 135 S. Ct. 72 (2014) (denying certiorari).

## II. DISCUSSION

The court exercises jurisdiction over this matter pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(i) (2006), which grants this Court exclusive jurisdiction over various civil actions not falling under the jurisdictional grants of subsections (a)-(h) of section 201 but that arise out of a law of the United States, such as the CDSOA, that provides for the administration of duties (including antidumping duties) on the importation of merchandise.

"[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*") (citations omitted).  However, a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 556 U.S. at 679.

Plaintiff's complaint has five counts.  Count 1 brings statutory challenges, Count 2 brings both statutory and constitutional challenges, and Counts 3, 4, and 5 bring constitutional challenges.  Compl. ¶¶ 47-59.

A. No Relief Can be Granted on Plaintiff's Statutory Challenges

Plaintiff's complaint alleges that the actions of the ITC and Customs violated the CDSOA and the APA and that the conduct of the two agencies was "arbitrary, capricious, and an abuse of discretion."  Compl. ¶¶ 47-51.  Specifically, plaintiff alleges that the agencies "inappropriately treated similarly situated domestic producers differently, without any rational basis for doing so," Compl. ¶ 51, and unlawfully "limited the definition of 'affected domestic producer' to include only those domestic producers who checked the support box on the Commission's questionnaire, while excluding from the definition those domestic producers who supported the petition through their conduct but did not express support for the petition," Compl. ¶ 51.  Relying on two decisions of the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals"), plaintiff asserts that such an interpretation conflicts with the purpose of the CDSOA, which, according to plaintiff, is "to reward domestic producers who support the petition through their conduct."  *Id.* (citing *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1382 (Fed. Cir. 2009) ("*SKF*"), *cert. denied*, 130 S. Ct. 3273 (2010); *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1382 (Fed. Cir. 2012) ("*PS Chez Sidney*")).

The court concludes that no relief can be granted on plaintiff's statutory claims.  The CDSOA provision relevant to these claims is the directive that the ITC, in providing its list of ADPs to Customs, include "a list of persons that *indicate support of the petition* by letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1) (emphasis added).  Plaintiff admits that "[in] its questionnaire responses, Standard indicated that it opposed the petition."  Compl. ¶ 24.  The court must dismiss plaintiff's statutory claims that the actions by the two agencies violated the CDSOA and APA because plaintiff has admitted that it opposed the petition in its questionnaire response—a fact disqualifying Standard from receiving CDSOA distributions

under the plain meaning of the statute—and alleges no other facts from which the court could reach a conclusion that the agencies' actions must be set aside.

Plaintiff's contention that the purpose of the CDSOA is "to reward domestic producers who support the petition through their conduct," Compl. ¶ 51, does not save plaintiff's statutory claims.  In neither *SKF* nor *PS Chez Sidney* did the Court of Appeals construe the CDSOA such that a domestic producer may express opposition to a petition in its ITC questionnaire responses and still be eligible to receive CDSOA distributions.  To the contrary, the Court of Appeals in *SKF* reasoned that in enacting the petition support requirement, Congress had permissibly, and rationally, concluded that those who did not support a petition through a letter or questionnaire response should not be rewarded.  *SKF*, 556 F.3d at 1357, 1359 ("At best the role of parties opposing (or not supporting) the petition in responding to questionnaires is similar to the role of opposing or neutral parties in litigation who must reluctantly respond to interrogatories or other discovery. . . . It was thus rational for Congress to conclude that those who did not support the petition should not be rewarded.").  The Court of Appeals' decision in *PS Chez Sidney* is not applicable to this action because it concerned a different factual pattern from the instant case.  The party in *PS Chez Sidney* checked a box in one questionnaire indicating its support for the petition and indicated that it took no position in a subsequent questionnaire.  *PS Chez Sidney*, 684 F.3d at 1377.  The holding in *PS Chez Sidney* did not qualify the holding in *SKF* to the benefit of parties that expressed opposition to a petition.  *Id.*, 684 F.3d at 1381.

Because the statute precludes ADP status to parties that did not support the petition through letter or questionnaire response, plaintiff can receive no relief on its statutory claims and the court, therefore, must dismiss these claims pursuant to USCIT Rule 12(b)(5).

### B.  No Relief Can be Granted on Plaintiff's Constitutional Challenges

Plaintiff's complaint also brings several challenges on constitutional grounds.  Counts 3 and 5 bring claims grounded in the First Amendment guarantees of free speech and the right to petition the government for redress of grievances.  Compl. ¶¶ 52-54, 58-59.  Count 4 brings claims grounded in the equal protection guarantee under the due process clause of the Fifth Amendment.  Compl. ¶¶ 55-57.  Count 2 alleges that the agencies' actions "violate[] Standard's constitutional rights," Compl. ¶ 51, but offers no additional constitutional grounds on which the court may evaluate plaintiff's claims.

Plaintiff claims, in Count 3, that "[d]efendants' application of the CDSOA . . . conditions receipt of a government benefit on a private speaker expressing a specific viewpoint—support for an antidumping duty petition through checking a 'support' box—and, therefore, is viewpoint discrimination in contravention of the First Amendment."  Compl. ¶ 54.  Plaintiff claims, in Count 5, that the CDSOA petition support requirement "violates the First Amendment to the Constitution as applied to Standard because it discriminates against Standard based on expression of [Standard's] views," Compl. ¶ 59, towards the antidumping petition "rather than [Standard's] action (its litigation support)," Compl. ¶ 59.  Plaintiff also claims in Count 5 that "[d]efendants' application of the CDSOA further violates the First Amendment's petition clause by unconstitutionally abridging Standard's right to petition the government for redress of grievances."  Compl. ¶ 59; *see* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

In Count 4 of the complaint, plaintiff claims that the agencies violated equal protection guarantees of the Fifth Amendment's due process clause because the agencies' actions "created a

classification that implicates Standard's fundamental right of speech," Compl. ¶ 56, and were "not narrowly tailored to a compelling government objective," Compl. ¶ 56. Plaintiff also claims that the agencies violated Fifth Amendment equal protection guarantees because the agencies' application of the CDSOA "impermissibly discriminates between Standard and other similarly-situated domestic producers who expressed support for the relevant antidumping petition . . . denying a benefit to Standard." Compl. ¶ 57.

The court concludes that plaintiff's constitutional challenges are foreclosed by binding precedent established by *SKF* and, therefore, must be dismissed. In *SKF*, the Court of Appeals held broadly that the CDSOA is "valid under the First Amendment" because it "is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad." *SKF*, 556 F.3d at 1360. The Court of Appeals also held that the CDSOA, as applied to the plaintiff SKF USA, Inc. ("SKF"), violated neither First Amendment principles nor equal protection principles under the Fifth Amendment when SKF had expressed opposition to the relevant antidumping duty petition in its ITC questionnaire response. *SKF*, 556 F.3d at 1343 ("SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition."). Like SKF, Standard expressed opposition to antidumping duty petition in an ITC questionnaire response. Compl. ¶ 24. Plaintiff fails to plead any facts that would allow the court to distinguish the application of the CDSOA to Standard in this case from the application of the statute in *SKF*. In all material respects, Standard's expression of opposition to an antidumping duty petition was equivalent to that made by SKF and properly resulted in Standard's disqualification from receiving distributions under the CDSOA.

In summary, plaintiff has failed to allege facts sufficient to demonstrate that its constitutional claims are not foreclosed by the binding precedent of *SKF*. As to these claims, therefore, the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citation omitted). The court must dismiss these claims pursuant to defendants' motion under USCIT Rule 12(b)(5).

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss this case under USCIT Rule 12(b)(5) for failure to state a claim must be granted. The court will enter judgment dismissing this action.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: December 31, 2014
New York, NY